**CASS v. CASS.**

**No. 5700.**

Court of Civil Appeals of Texas. Amarillo.

Feb. 18, 1946.

Rehearing Denied March 25, 1946.

Nelson, Brown & McCleskey, of Lubbock, for appellant.

Crenshaw, Dupree & Milam, of Lubbock, for appellee.

STOKES, Justice.

Appellee, Harold Cass, filed this suit against the appellant for divorce and for custody of their minor daughter, charging the appellant with harsh, cruel, and tyrannical treatment of such nature as to render their further living together insupportable. He alleged that he and the appellant were married September 23, 1939; that their infant daughter, Sonja Sue, was born to them September 7, 1940; that they separated in November 1944; and that on account of the alleged conduct of appellant she was not a fit person to have the care, custody, and control of their child.

Appellant answered the petition by the general issue and charges of cruelty on the part of the appellee. She alleged that the appellee was not a suitable person to have the care, custody, and control of their minor daughter and prayed that a divorce be

granted to her and that she be awarded the care, custody, and control of the child.

The case was submitted to the court without the intervention of a jury and resulted in a divorce being granted to the appellee, and the care, custody, and control of Sonja Sue was decreed to Wesley Stevens and his wife, the parents of the appellant, for six months of each year and to E. E. Cass and his wife, parents of the appellee, for the remaining six months of each year. The decree also required the appellee to pay into the registry of the court the sum of $25 each month for the support of the child. Appellant duly excepted to the judgment, gave notice of appeal, and presents the case in this Court upon two assignments of error, which we shall discuss in the inverse order of their presentation in the brief. She contends, first, that the decree entered by the court in which a divorce was granted to the appellee is not supported by full and satisfactory evidence as required by Article 4632, Revised Civil Statutes, 1925; secondly, that the trial court abused its discretion in taking the care, custody, and control of their infant daughter from her and placing it in the grandparents, because the evidence was not of the nature required by law to overcome the legal presumption that the welfare and best interests of the child would be subserved by awarding its custody to her.

The record shows that appellant is a young woman twenty-four years of age; that after some of their friends and associates had joined the Navy she corresponded with some of them, particularly one young man to whom she wrote letters and from whom she received letters in which expressions of love and affection were made. Some of these letters fell into the hands of the appellee and trouble and controversy between them ensued. Appellant obtained employment with the telephone company at Post in January 1944 and from that time the relations between her and the appellee became strained and they finally separated in November 1944. After their separation appellant took the baby to a rooming house, where she lived for several months. During the time she resided there several young men were seen to enter her room and, according to the testimony of one or two of the witnesses, on at least two occasions remained until late in the night. Although appellant explained all of those incidents in such manner as to neutralize their apparent damaging effect, they are sufficient, in our opinion, to support the judgment granting a divorce to appellee, and appellant's contention that the court erred in granting the divorce will therefore be overruled.

Appellant's second contention relates to that portion of the decree which deprived her of the custody of her infant daughter and placed it in the grandparents. In our opinion, this assignment must be sustained. Since the opinion by our Supreme Court in the case of State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901, the rule governing the disposition, care, and custody of minor children has been well established in this State. It was there held, in effect, that the discretion to be exercised by a court in such matters is not an arbitrary one but, in the absence of positive disqualifications of the parent, or parents, for the proper discharge of their duties toward their children, they have a paramount right to their custody, especially of children of tender years. It is held in that case, and in a long line of authorities following it, that unless it is made plainly to appear that the parents are not worthy of the trust, it will be presumed that the interests and welfare of such children will be promoted by placing and maintaining their custody in the parents. In our opinion, the record before us does not reveal a condition under which the court was warranted in depriving the appellant of the custody of her infant daughter. It is probably true that either of the grandparents are at this time able to furnish the child with a more commodious home than appellant can furnish to her, but that is not the test. The testimony shows that appellant is industrious, that she is able and willing to work, and that she is capable of earning a wage sufficient to meet the reasonable living expenses of herself and the child. The record leaves no doubt she can do so with reasonable financial assistance of the appellee. In fact, according to the testimony, practically all of its clothing and other necessaries have been supplied by appellant since she procured employment in January 1944. Four years after the child was born, appellant learned that the physician's fee incurred at its birth had not been paid and she immediately paid it with interest. The record further shows she was diligent in her attendance at the church services, in taking the child to Sunday school, and otherwise promoting its moral welfare. We think the testimony furnishes,

ample assurance that appellant will give to the child every necessary care and attention if its custody is awarded to her. In so far as her moral character, as revealed by her acts and conduct, is concerned, we find nothing in the record which we deem sufficient to show that she is not worthy of the trust. In view of her explanation of the correspondence which she carried on with the young man in the Navy, we are convinced that it was not of that serious nature which the court seems to have placed upon it. She said her sentiments toward him were those she would have for a brother or close friend of long standing and that the expressions of affection in her letters to him had reference only to that relationship. She said, moreover, that appellee knew of the correspondence and could have read the letters at any time he wished to do so, and that she usually gave him the letters to be mailed by him. Although appellee knew of the correspondence and the nature of the expressions contained in the letters, he himself testified that he endeavored to induce appellant to return and live with him, which would indicate that he did not consider the correspondence as being of a highly culpable or improper nature. As to the visitations of young men to her room, which occurred after the separation, there were only two of them which, in our opinion, could be considered of a questionable nature. On one of those occasions the young man with whom she had corresponded came to her room in the rooming house about 10 o'clock one night and remained there until about 2 o'clock the next morning. She testified that her baby was sick and that she did not retire until after 2 o'clock because she was administering medicine to the child every hour and she feared that if she retired she might fall asleep and fail to awaken at the proper time. She said that the young man observed the light in her room and came up and remained with her until she gave the last dose of medicine at 2 o'clock, when he left, and that the door to the room stood open during the entire time he was there. There was no testimony that anything of an improper nature took place at that time, nor is there evidence that the young man ever returned at any other time or showed to her any special attention. The proprietor of the rooming house testified as to the other visitation. He said that some young man, unknown to him, went to appellant's room about 11 o'clock on the last night appellant resided there and remained in the room about two hours. Appellant denied this emphatically and stated, without contradiction, that she did not spend that night in the rooming house. She said she packed her belongings early in the evening and left the rooming house about 9 o'clock and spent the night with a friend in another part of town. There was other testimony concerning social functions attended by the appellant at which intoxicating liquors were served, but there was no evidence of overindulgence by the appellant or that she was ever addicted to the use of alcoholic beverages. Appellee himself testified that appellant had been good to the baby. He said she had made it a good mother and that she knew how to take care of it. The child is only five years of age and it is a rule of universal application that, in the absence of some condition or circumstance which renders her disqualified, the mother, above all others, is the one who should have the custody, care, and control of small children.

Although we are of the opinion that the judgment of divorce had support in the testimony, especially in view of the interpretation which seems to have been placed upon it by the court below, we are convinced that there is no evidence that appellant is not fully qualified to have the care, custody, and control of her infant daughter and that the best interests of the child will be subserved by decreeing its custody to her. Cardenas v. Barrera, Tex.Civ.App., 216 S.W. 474; Garner v. Bowles, Tex.Civ. App., 233 S.W. 300; State ex rel. Carouthers v. Dowdell, Tex.Civ.App., 168 S.W. 2; McGarraugh v. McGarraugh, Tex. Civ. App., 177 S.W.2d 296; Moore v. Moore, Tex.Civ.App., 213 S.W. 949.

The judgment of the court below will be affirmed in so far as it granted a divorce and required the appellee to pay into the registry of the court the sum of $25 per month as a contribution to the support of the child; but as to the custody of the child, the judgment will be reversed and judgment here rendered decreeing its custody to the appellant with suitable privileges of visitation by the appellee. The costs accrued in the court below and in this Court will be taxed against the appellee.