Thomas J. BRIDGES et al., Appellants,

v.

Leora Mae DAVIS et vir, Appellees.

No. 13123.

Court of Civil Appeals of Texas.

Galveston.

June 20, 1957.

Bernard A. Golding, Houston, for appellants.

Hay, Kirk & Baggett and Russell T. Van Keuren, Houston, for appellee.

GANNON, Justice.

Before the 5th day of December, 1955, appellant Thomas J. Bridges and appellee Leora Mae Davis were husband and wife—the parents of two girl children of tender years. On that day they were divorced by decree of the 129th District Court of Harris County and the custody of the two children was awarded by the decree to appellant Thomas J. Bridges. Mrs. Davis, formerly Mrs. Bridges, did not appear in court at the trial of the divorce action to contest it in any way, nor did she resist the application of her husband to be awarded custody of the two children. In the time intervening between the divorce decree and August 1, 1956, one of the children Janice Lea, six years of age, has lived with H. W. Jones and wife, separate and apart from her father. Mr. Jones is the brother of appellee, Leora Mae Davis. The other child, Donna Gail, aged five, has lived for most of the time intervening between the time of the divorce decree and August 1, 1956, with a Mr. and Mrs. W. P. Owen, also separate and apart from her father. The Owens are a couple past middle age. Apparently the placement of the children in these homes was with the consent of their father, Thomas J. Bridges. Bridges himself has lived separate and apart from the children in apartments which he has shared with other men. The Jones' home and the Owens' home are widely separated. Shortly after the date of her divorce from Thomas J. Bridges, Mrs. Bridges married Sammie Joe Davis, her present husband.

On August 1, 1956, Mrs. Davis, joined by her husband, filed an independent suit in the Court of Domestic Relations of Harris County, naming as defendants her former husband, Thomas J. Bridges, Walter P. Owens, and H. W. Jones, asking readjudication of the custody of her little girls and that on such readjudication their custody be awarded to her. Mrs. Davis' petition does not in any way attack the validity, as of its date, of the prior adjudication of the custody question by the 129th District Court, but does allege a change of conditions material to the welfare and best interest of the children since the decree of that court "and that such changed conditions and circumstances render it necessary and advisable that the provisions for the custody and control of said children made in said decree be reviewed by this Court and that such decree pertaining to the custody and control of said minor children be set aside and held for naught by this Court, and that the Court alter and change such decree and enter a new decree herein granting to Petitioner the full custody and control of said children; that it will be to the best interest of said children that said former decree concerning their custody be set aside and that a new decree granting this Petitioner full custody be entered herein; that Petitioner herein has up to this time complied with such former decree of this Court in all things, but that the Defendant, Thomas J. Bridges, has separated the children and put them into foster homes and it would be to the best interest of such children if they were in one home under the guidance and control of their mother." Additional allegations in her petition are that at the time of her divorce Mrs. Davis was unable to care for her children, having no permanent home in which to place them, but that she is now established with her present husband in a home on a 2½ acre tract of land and well equipped to care for the children; that her husband, Sammie Joe Davis, is eager to help in the care and education of the children "and that it is necessary that they [the children] receive the necessary control and guidance that only a mother can give." It is prayed on the allegations of a change of conditions material to the welfare and best interest of the children that their custody be awarded and adjudicated to Mrs. Davis. All defendants appeared and answered, pleading res judicata and stare decisis in limine. Defendants also by special exception raised the issue of the jurisdiction of the Court of Domestic Relations, claiming sole jurisdiction to revise or readjudicate the custody question to be in the 129th District Court. Additionally,

along with special denials, defendants pled their theory of the facts specially, claiming that to grant the mother's prayer for readjudication by her independent suit in the Court of Domestic Relations rather than in the court where the case was originally tried "would be equivalent to wrenching the processes of respect for judicial decrees from recognized judicial tracks and avoiding the warning issued long ago by the Bard of Avon in the Merchant of Venice:

> " 'Twill be recorded for a precedent;
> And many an error, by the same example
> Will rush into the state."

On September 4, 1956, all parties being present, the case was tried to the court without a jury. The evidence being in, the court found the material allegations in plaintiff's petition to be true "and that since the rendition of said Decree [the decree of December 5, 1955, of the 129th District Court], there has been a material change in conditions affecting the best interest and welfare of the children; and the Court further finds that it is to the best interest and welfare of the children that their care and custody be awarded to the Plaintiff, Leora Mae Davis * * *." The court accordingly, by its final decree, adjudged and ordered that the care, custody and control of the children be awarded to their mother, Leora Mae Davis. From this decree the defendants, Bridges, Owens, and Joneses appeal on a single point of error, as follows:

This cause should be reversed because the Court below erred, as well as abused its discretion, in entering judgment for appellees, since the evidence was wholly insufficient to show that since the entry of the decree in December, 1955, conditions had so changed that it could be reasonably said that it would be injurious to the well-being of these minor children to leave their custody as previously determined, especially in view of the fact that these minor children were placed by Appellee, Mrs. Davis, in custody of Appellants, Owens and Jones.

This Mrs. Davis and husband counter as follows:

The evidence was sufficient to sustain the trial court's finding that a material change of conditions exists since the rendition of the divorce decree affecting the well being of the children and awarding custody to their mother.

■ There can be no question of the right and power of the court of domestic relations, or any other court, having jurisdiction of the subject matter, to readjudicate in an independent suit the custody of these children on a showing of a change of conditions material to their best interest and welfare occurring subsequent to the original custody decree made and entered by the 129th District Court at the time of the original divorce in December of 1955. The governing law is too well established to require citation of authority.

■ We have carefully reviewed the evidence and find it ample to sustain the trial court's findings of material changes in conditions occurring since the original custody decree, fully justifying, if not demanding, the entry of the order complained of by which the custody is awarded the mother.

At the time of the entry of the first custody decree, Mrs. Davis was in bad physical condition, and even worse financial condition. She was suffering from a stomach ulcer and under a doctor's care and reduced in weight to 89 pounds. At that time she was hardly able to care for herself and wholly unable to care for the children or to furnish them an appropriate home or home life. Her cash resources then came to a total of $1.75. Prior to the divorce in question, Mr. and Mrs. Bridges had previously been divorced and had remarried. After the first divorce and prior to the remarriage, Mrs. Bridges had had the custody

of the children, but according to her testimony Mr. Bridges had "never paid one penny" toward their support. Therefore, she felt at the time of the second divorce and first custody decree that she could not rely upon assistance from Mr. Bridges in caring for the children and providing for their maintenance and support. At the time of the hearing before the Court of Domestic Relations, Mr. and Mrs. Davis owned a nice home situated on 2½ acres of land, subject only to a reasonable mortgage which the couple were able to carry comfortably on a dependable income from Mr. Davis' earnings. At the time of this hearing, the two young sisters were living in separate homes ten or eleven miles apart. There is no evidence to establish that the mother was in any way an unfit person to care for the children, nor is her normal mother's love for them questioned. From the evidence, it appears that she and her present husband are well equipped and qualified to re-unite the children in a comfortable home under one roof where the little girls may have the care and affection of their natural mother, which is universally conceded to be irreplaceable. Since the original award of custody to him, Mr. Bridges has never kept the children but has placed them in the separate foster homes indicated. He explains, "I never kept the children with me because I had to work and did not have any way to take care of them properly."

In our opinion, the trial court was fully authorized, on the undisputed and uncontradicted showing of the material change in condition occurring subsequent to the original decree in the status of the mother and in her financial capacity to care for the children and furnish them a home, to make the order appealed from changing the custody from the father to the mother. It is clear that the Court of Domestic Relations passed on facts materially different in relation to the welfare and interest of the children than those adjudicated by the 129th District Court in the divorce decree—facts which arose after that decree. In the circumstances of this record, if such were possible, it would take an overwhelmingly compelling showing indeed to justify the separation of the children from their mother and from each other. In justice to the appellants, each and all, we observe that from the evidence it appears the children have been nurtured and cared for as well as could be, save by their own mother, between the date of the original divorce and the date of the readjudication. The love and affection which the appellants bear these children, especially the appellants Joneses and Owens, is praiseworthy and commendable. Still, this affords no justification for separating the children from their mother or each other.

The judgment of the trial court is affirmed.

BELL, J., not sitting.